IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-4861-K |
| | § | |
| ARCTURUS CORPORATION, | § | |
| ASCHERE ENERGY, LLC, LEON | § | |
| ALI PARVIZIAN a/k/a | § | |
| ALEX PARVIZIAN, ALFREDO | § | |
| GONZALEZ, AMG ENERGY, LLC, | § | |
| ROBERT J.BALUNAS, and | § | |
| R. THOMAS & CO., LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Securities and Exchange Commission's (the "SEC")

Motion for Remedies and for Entry of Final Judgment as to Defendants Parvizian,

Arcturus, and Aschere (the "Motion") (Doc. No. 271).  Defendants Leon Ali Parvizian

a/k/a Alex Parvizian, Arcturus Corporation, and Aschere Energy LLC (together, the

"Parvizian Defendants") filed a Response (the "Response") (Doc. No. 281) in

opposition to the Motion and the SEC filed a Reply in Support of its Motion (the

"Reply") (Doc. No. 285).  Also before the Court are the Parvizian Defendants'

Supplemental Response (the "Supplemental Response") (Doc. No. 297) and Plaintiff's

Reply (the "Supplemental Reply") (Doc. No. 299).  Having considered the Motion,

the responses, the replies, the applicable law, and the relevant portions of the record, the Court **GRANTS** the Motion for the following reasons.

## I.    Background

All page citations herein are to the CM/ECF-assigned page number. The Court recites only the relevant background of this case as it relates to the analysis and determination of this Motion. *See also* Doc. No. 76 (prior Memorandum Opinion and Order providing detailed factual background).

The SEC claims that, from 2007 through 2011, the Parvizian Defendants offered and sold, through unregistered brokers, interests in six oil and gas well drilling projects that were unregistered securities. Doc. No. 5 at 6-8, 26-27. Further, in their efforts to raise money from investors, the Parvizian Defendants made false, fraudulent, and material misrepresentations and omissions. *Id.* at 14-26. The SEC asserts that the Parvizian Defendants raised almost $22 million for these six offerings from 339 investors across the United States. *Id.* at 9; *see* Doc. No. 271-1 at 3. The six oil and gas well drilling projects became the subject of an investigation by the SEC. *Id.*

In December 2013, the SEC filed this civil enforcement action alleging violations of the registration and anti-fraud provisions of Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 (the "Securities Act"), and Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 thereunder. *See* Doc. No. 5 at 1, 28-31. This matter was set for trial on October 4, 2021. Then, on October 6, 2021, the parties filed an Agreed Motion for Entry of Agreed Partial

Judgment (Doc. No. 266) as to the liability of the Parvizian Defendants, reserving for the Court the remedies, if any, to be imposed.  Doc. No. 266 at 1. The Court entered the parties' Agreed Partial Judgment that same day.  Doc. No. 267.  (The other named defendants—Alfredo Gonzalez, AMG Energy, LLC, Robert J. Balunas, and R. Thomas & Co., LLC—previously agreed to the entry of final judgments taken against them. Doc. Nos. 235, 242, 268 & 269.)  The Agreed Partial Judgment includes a provision that states, in relevant part,

> Further, the Court shall determine whether it is appropriate to order disgorgement of ill-gotten gains and/or a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and, if so, the amount(s) of the disgorgement and/or civil penalty.  If disgorgement is ordered, the Court will determine whether it is appropriate to order prejudgment interest thereon.  In connection with the Commission's motion for remedies, and at any hearing held on such a motion: (a) Defendants will be precluded from arguing that they did not violate the federal securities laws as alleged in the complaint; (b) Defendants may not challenge the validity of this Consent or the Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Federal Rule of Civil Procedure 56(c). In connection with the Commission's motion for remedies, the parties may take discovery, including discovery from appropriate non-parties.

Doc. No. 267 at 2-3.

The SEC filed this Motion seeking permanent injunction, disgorgement of ill-gotten gains totaling $9,844,127 plus prejudgment interest (jointly and severally), and assessment of a $500,000 third-tier civil penalty (jointly and severally).  In their

Response to the Motion, the Parvizian Defendants requested discovery, as permitted by the parties' Agreed Partial Judgment, to purportedly aid the Court in its determination of this Motion, and specifically to "allow the Court to avoid basing its consideration of this [disgorgement] issue on an approximation."  Doc. No. 281 at 8.  The Court entered an order providing the Parvizian Defendants an opportunity to further brief this discovery request to identify with more specificity the discovery sought, from whom, and how the discovery would assist the Court.  Doc. No. 288.  The Parvizian Defendants filed a brief in support (Doc. No. 289) and the SEC filed a response (Doc. No. 290).  The Court issued an order granting in part the Parvizian Defendants' request only as to discovery related to the business expenses and accounting documents that they identified in their brief.  Doc. No. 292 at 2.  The Court specifically denied the Parvizian Defendants' request for time to secure the tax returns and Forms K-1.  *Id.* at 1.  Thereafter, the Parvizian Defendants filed their Supplemental Response to the Motion for remedies, and the SEC filed its Supplemental Reply.

## II.    Motion for Remedies

### A.    Facts Accepted as and Deemed True for Motion for Remedies

As previously noted, the parties' Agreed Partial Judgment provides that, "for the purposes of such motion [for remedies], the allegations of the Complaint shall be accepted as and deemed true by the Court[.]"  Doc. No. 267 at 2-3.  Accordingly, as

agreed to by the parties, the Court accepts and deems as true the facts set forth in the Amended Complaint (Doc. No. 5).

Parvizian formed his companies, Arcturus and Aschere, to offer and sell interests in six purported joint ventures involving oil and gas exploration and drilling activities—Hillcock (Arcturus), Piwonka (Arcturus), Conlee (Aschere), Frayley-Nelson (Aschere), Chips (Aschere), and Wied Field (Aschere) (each separately, the "Offering", and together, the "Offerings").  In total, the Parvizian Defendants raised almost $22 million (net) from at least 339 investors nationwide for these Offerings through entities Parvizian controlled and salespersons he directed.

Parvizian labeled these Offerings as "joint ventures" to avoid federal securities regulations.  However, these Offerings were in fact securities under federal law, and none were registered with the SEC nor were they exempt from registration.  Further, Parvizian was not a registered broker-dealer with the SEC or associated with a broker-dealer registered with the SEC when he offered or sold these securities.  Parvizian prepared written offering materials, such as Confidential Information Memoranda ("CIMs") and Joint Venture Agreements ("JVAs"), for the Offerings that were distributed to investors and that included material misrepresentations and omissions. Although investors were led to think they would be active participants in the management of the Offerings, Parvizian (through Arcturus and Aschere) had near exclusive control of every aspect of each venture and the investors were just passively involved with no actual control despite the Offering materials suggesting otherwise.

In addition to the illegal sale of the unregistered Offerings, the Parvizian Defendants committed fraud in connection with these Offerings, failing to make disclosures and making fraudulent and material misrepresentations to investors. For instance, the Parvizian Defendants failed to disclose, or insufficiently disclosed, then-current litigation that would materially affect either Aschere or Arcturus or the Offerings. The investors were also not informed of the significant mark-up of well costs for four of the Offerings which the Parvizian Defendants used to set an inflated offering price. Parvizian also did not segregate the funds for each Offering and the Parvizian Defendants used funds from these Offerings for non-venture related purposes, such as legal fees and settlement payments for unrelated litigation as well as personal expenses, without disclosing this to investors or obtaining their approval. Further, Parvizian prematurely called for and received from the investors completion funds for some of the Offerings even though drilling had not yet begun or it was well-before completion because the Offering's proceeds had been completely (or almost completely) spent on non-venture expenses; but Parvizian never disclosed any of this to the investors. Parvizian also raised funds for an Offering (Fraley-Nelson) despite knowing, and without disclosing to investors, that Aschere's working interest in the well had been terminated for failure to pay its share of the drilling costs.

## B.    Disgorgement

Disgorgement of ill-gotten gains (known by various labels) has long been part of "equity jurisprudence." *SEC v. Hallam*, 42 F.4th 316, 327 (5th Cir. 2022); *see Liu v.*

*SEC*, 591 U.S. 71, 72, 79-82 (2020) (discussing the history of this equitable remedy "strip[ping] wrongdoers of their ill-gotten gains," sometimes referred to as "restitution, an accounting, or disgorgement"). In 2002, Congress amended the Exchange Act to provide that, in civil enforcement actions, the SEC "'may seek, and any federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors.'" *Hallam*, 42 F.4th at 330 (quoting 15 U.S.C. § 78u(d)(5)). In *Liu*, the Supreme Court defined the contours of "any equitable relief" as permitted under § 78u(d)(5) and held that a court could award disgorgement that "does not exceed a wrongdoer's net profits and is awarded for victims." *Liu*, 591 U.S. at 75. A remedy that compels the wrongdoer to pay more than his profits from the wrongdoing would convert this equitable remedy into a penalty which is not permitted under § 78u(d)(5). *Id.* at 79-80, 85.

The Fifth Circuit recently remarked that, "before this or any other circuit could authoritatively construe *Liu*," Congress amended specific provisions of § 78u(d) in 2021. *Hallam*, 42 F.4th at 334 (citing The William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 (the "2021 NDAA"), Pub. L. No. 116-283, § 6501, 134 Stat. 3388, 4625-26 (2021) (amending 15 U.S.C. § 78u)). As amended, Section 78u(d)(3) now vests federal courts with jurisdiction to "require disgorgement under paragraph (7) of any unjust enrichment by the person who received such unjust enrichment as a result of such violation." § 78u(d)(3). In addition to the "equitable relief" permitted under § 78u(d)(5), Congress explicitly authorized

that, in actions brought "under any provision of the securities laws, the [SEC] may seek, and any Federal court may order, disgorgement." § 78u(d)(7). The Fifth Circuit concluded that this newly authorized "legal disgorgement" is separate "from the equitable 'disgorgement' permitted in *Liu*. *Hallam*, 42 F.4th at 341; *cf. id.* (commenting that Congress's decision to use the term "disgorgement" rather than the "generic term 'equitable relief'" "suggests that the remedy is not equitable."). Finally, these amendments apply "to any action or proceeding that is pending on . . . the date of enactment of the 2021 NDAA." *Id.* at 335 (cleaned up) (citing 2021 NDAA § 6501(b)).

The Fifth Circuit expressly "reject[ed] the suggestion that the [2021] amendments merely codif[ied] *Liu*." *Hallam*, 42 F.4th at 337. The Fifth Circuit concluded instead that Congress's "swift, expansive action is more consistent with a desire to curtail the [*Liu*] Court's decision—that is, to permit the sort of disgorgement awards ordered before the [*Liu*] Court reemphasized 'the limitations upon its availability that equity typically imposes.'" *Hallam*, 42 F.4th at 341 (quoting *Liu*, 591 U.S. at 87). Although this "legal disgorgement" is distinct from the "equitable disgorgement" recognized in *Liu*, courts nevertheless apply the same burden-shifting framework outlined by the Supreme Court in *Liu*. *Id.*

Under this framework, the SEC "has the burden reasonably to approximate the defendant's 'unjust enrichment' attributable to the securities violation." *Id.* (citing § 78u(d)(3) and *SEC v. Halek*, 537 F. App'x 576, 581 (5th Cir. 2013)). The amount of

"unjust enrichment" cannot "include 'income earned on ill-gotten profits, but it may include interest." *Hallam*, 42 F.4th at 341 (internal quotations omitted) (quoting *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978)).  If the SEC satisfies its burden, the defendant must then rebut the SEC's evidence by proving that the amount requested is "unreasonable". *Hallam*, 42 F.4th at 341 (citing *Halek*, 537 F. App'x at 581).

### 1.    Disgorgement Amount

The SEC asks the Court to order disgorgement from the Parvizian Defendants, jointly and severally, of $9,844,127, the total of the ill-gotten profits from their illegal Offerings and fraudulent scheme that violated federal securities laws.  *See* Doc. No. 267 at 2 (citing § 78u(d)(3)); Doc. No. 271 at 5 (citing § 78u(d)(7)).  The Court has carefully reviewed the SEC's supporting evidence, and has done so in light of the facts previously noted which the Court must take and deem as true.  *See, e.g.*, Doc. No. 271-1 (sworn declaration of Ty Martinez—SEC Senior Account, CPA, certified Internal Auditor, Certified Fraud Examiner) at 4-8; *see supra* Sec. II.A.  Mr. Martinez's disgorgement approximation is based entirely on the Parvizian Defendants' own bank and financial records.  Doc. No. 271-1 at 2-8; *see SEC v. Voight*, 2021 WL 5181062, at *7 (S.D. Tex. June 28, 2021), *aff'd*, 2023 WL 1778178 (5th Cir. Feb. 6, 2023).  The net proceeds raised by the Parvizian Defendants for all six Offerings totaled $21,861,929 from 339 investors.  *See, e.g., id.* at 3.  In calculating the disgorgement amount, Mr. Martinez began with the "net proceeds after investor returns/refunds, subtracted well and drilling expenses affiliated with each Offering, and deducted

distributions to investors." *Id.* at 4-5; *see Voight*, 2021 WL 5181062, at *7. Mr. Martinez used the Parvizian Defendants' own Accounting Ledgers (which were previously filed with the Court) to identify legitimate business expenses for purposes of his disgorgement calculation. *Id.* at 5, 7. Mr. Martinez's sworn statement is that his disgorgement calculation is a reasonable approximation of their unjust enrichment and that he resolved any discrepancies in the Parvizian Defendants' favor. *See, e.g., id.* at 5; *see also id.* at 5-8 (detailed explanation and charts explaining how he arrived at his disgorgement calculation).

The Court finds that the SEC's evidence satisfies its burden of showing that the requested disgorgement amount of $9,844,127 is a reasonable approximation of the Parvizian Defendants' unjust enrichment from their violations of federal securities laws as to each of the six Offerings at issue. *See Hallam*, 42 F.4th at 341; *see also* Doc. No. 237 at 2 ("Defendants will be precluded from arguing that they did not violate the federal securities laws as alleged in the complaint.").

Because the SEC met its burden, the Parvizian Defendants were required to then prove that this is an unreasonable amount; but they failed to do so. In their initial Response to the Motion, the Parvizian Defendants did not produce any evidence of legitimate business expenses and did not otherwise demonstrate how this disgorgement amount is not a reasonable approximation. *See Hallam*, 42 F.4th at 341. The Parvizian Defendants argue that Mr. Martinez does not distinguish funds that were illegally obtained from those legally obtained, that he "assumes" the investor funds were "ill-

10

gotten gains" without having made a "detailed accounting", that legitimate expenses were not "properly or fully account[ed] for", and that there are "multiple gaps" in his analysis. Doc. No. 281 at 10-11. Each of these assertions is without merit. First, the Court could not find, and the Parvizian Defendants do not cite, any authority for their suggestion that a detailed accounting is required. Caselaw is clear that the SEC is required only to show that the requested amount of disgorgement is a reasonable approximation of the Parvizian Defendants' unjust enrichment from these securities violations. *Hallam*, 42 F.4th at 341 (internal citations omitted). And "[a]ny risk of uncertainty [in calculating disgorgement] should fall on the wrongdoer whose illegal conduct created that uncertainty." *SEC v. Gilman*, Civ. Action No. 3:18-CV-1421-L, 2021 WL 4125195, at *6 (N.D. Tex. Sept. 9, 2021)(Lindsay, J.) (quoting *SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)); *Myers*, 2018 WL 11353113, at *6 ("Lastly, any uncertainty is to be resolved against [the defendant]."). Further, all six of the Parvizian Defendants' Offerings were unlawful, therefore all investor funds were illegally obtained and "all of the profits of those [O]fferings are subject to disgorgement." *Voight*, 2021 WL 5181062, at *10. Based on the Parvizian Defendants' own financial and bank records, Mr. Martinez very clearly identified and then deducted the legitimate business expenses incurred by each of the Offerings. *See, e.g.*, Doc. No. 271-1 at 8; *see also id.* at 5 (testifying that inconsistencies or discrepancies were "skewed in the Defendants' favor"); *id.* at 7-8 (explaining that, in calculating the disgorgement amount, certain drilling expenses and investor distributions, totaling over

$2.3 million, were nevertheless deducted from the net funds raised even though these expenses were incurred and the distributions were made *outside* the relevant time period of Mr. Martinez's review, which was the end of July 2012).  The Court certainly may not disregard evidence of legitimate expenses; but the Parvizian Defendants bear the burden of providing evidence of such expenses.  To be sure, "*Liu* did not purport to impact the rule on which party bears the burden of proving legitimate expenses." *Voight*, 2021 WL 5181062, at *10.  Here, the Parvizian Defendants provide no such evidence.

The Parvizian Defendants also argue that the SEC fails to provide a reasonable approximation of unjust enrichment because "Arcturus and Aschere operated at a cumulative net loss exceeding $1,000,000 during the relevant years of operation," attaching tax returns for 2009 through 2013 as evidence that the Parvizian Defendants did not realize any "profits causally connected to the violation."  Doc. No. 281 at 12. According to the Parvizian Defendants, "[b]ecause Arcturus and Aschere ultimately lost money in their business operations, there is no unjust enrichment or overall profit attributable to these respective" Defendants and disgorgement should not be ordered. *Id.* at 12-13; *see id.* at 12 (discussing net losses incurred by Amerest Securities, which is wholly owned by Parvizian, as further evidence the Parvizian Defendants were not unjustly enriched in any way).  Putting aside the question of whether the tax return information is in fact truthful, this argument fails for other reasons.  The Parvizian Defendants do not explain their conclusory assertion that because these entities

allegedly suffered "cumulative net loss[es]" "there is no unjust enrichment or overall profit" attributable to the Parvizian Defendants that could support a disgorgement award. *Id.* at 12. There is simply no legal basis for such an argument. The Court is concerned only with the Parvizian Defendants' unjust enrichment from these six Offerings. This record substantiates the conclusion that the Parvizian Defendants were unjustly enriched as the result of their violations of securities laws related to these Offerings. The Parvizian Defendants' mere argument fails to rebut the SEC's showing that the disgorgement amount of $9,844,127 is a reasonable approximation of their unjust enrichment.

In addition to these meritless arguments, the Parvizian Defendants also requested leave to conduct discovery, as permitted under the Agreed Partial Judgment, to allow them to "respond more fulsomely" to the SEC's Motion and to assist the Court in its determination of whether the disgorgement amount is a reasonable approximation. Doc. No. 281 at 7. After inviting the parties' briefing on this request (to which the SEC was wholly opposed), the Court entered an order granting in part and denying in part the discovery request. The Court expressly denied the Parvizian Defendants' request for time to secure tax returns and Forms K-1, but the Court did grant time for discovery as to their own accounting documents and records identifying business expenses. Doc. No. 292 at 1-2.

The Parvizian Defendants filed their Supplemental Response (Doc. No. 297), claiming it "provide[s] the Court with information concerning additional, legitimate

business expenses that they content [sic] should be considered by the Court in undertaking its disgorgement analysis under *Liu*." Doc. No. 297 at 3. However, the only information the Parvizian Defendants include are "additional tax transcripts of complete tax returns for the Defendant companies during the relevant time period", which the Court expressly precluded in its discovery order. Therefore, the Court does not consider those tax returns. Further, the Parvizian Defendants echo the "net loss" argument from their original Response. As the Court previously explained in rejecting this argument, the Parvizian Defendants' claim that these losses are "legitimate expenses" to be deducted is completely unfounded. To be sure, the Supplemental Response includes no new information that was authorized in discovery and certainly none evidencing legitimate business expenses that may be deducted. *See also Voight*, 2021 WL 5181062, at *10 ("*Liu* did not purport to impact the rule on which party bears the burden of proving legitimate expenses.").

In conclusion, the Court finds that the Parvizian Defendants fail to rebut the SEC's showing that its disgorgement amount is a reasonable approximation of their unjust enrichment the Parvizian Defendants realized from their securities violations.

### a.    Inability to pay

The Parvizian Defendants also maintain that "courts have consistently and routinely reduced disgorgement" when a defendant makes a showing that they are unable to pay. *See* Doc. No. 281 at 9. The only cases cited by the Parvizian Defendants in support of this assertion are administrative matters. The Fifth Circuit and district

courts in this Circuit have repeatedly emphasized that financial hardship is not a factor the district court considers in whether to award disgorgement and for what amount. *See SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 746 (5th Cir. 2004) (holding the district court did not abuse its discretion in awarding $7.5 million in disgorgement where this was "a reasonable estimate of the profits received by fraud" and the defendants "inability to pay is irrelevant."); *SEC v. Myers*, 2018 WL 11353113, at *4 (E.D. Tex. July 25, 2018) ("Financial hardship is not a ground for denying disgorgement."); *SEC v. McCollum*, 2017 WL 8182626, at *2 (W.D. Tex. Apr. 11, 2017) ("When determining disgorgement, a defendant's inability to pay is irrelevant.") (internal quotations omitted); *SEC v. Bergin*, Civ. Action No. 3:13-CV-1940-M, 2015 WL 4275509, at *2 (N.D. Tex. July 15, 2015)(Lynn, J.) ("[T]he defendant may not plead financial hardship as a ground for denying disgorgement."). The Fifth Circuit confirmed that if the SEC establishes the defendant was unjustly enriched as the result of his wrongdoing, "that amount of money may be disgorged even if the defendant has otherwise disposed of, reinvested, or spent the particular assets that he wrongfully obtained." *SEC v. Seghers*, 298 F. App'x 319, 336 (5th Cir. 2008); *see id.* ("A defendant is not immune from disgorgement merely because he has spent or lost the proceeds of his fraudulent scheme."). Even if the Court were to consider this factor, which it is not, the Parvizian Defendants submit only argument on this point and do not make any showing about their inability to pay. *See, e.g.*, Doc. No. 281 at 18.

### b.    Disgorgement awarded for Investors

In addition to ensuring disgorgement does not exceed the Parvizian Defendants' net profits, the Court must confirm disgorgement is awarded for victims so to not convert this into a punitive remedy. *SEC v. Blackburn*, 15 F.4th 676, 682 (5th Cir. 2021) (citing *Liu*, 591 U.S. at 79). The SEC has identified 339 investors who were victims of the Parvizian Defendants' fraudulent Offerings, and the SEC maintains that it is feasible to distribute disgorged funds to these investors. *See, e.g.*, Doc. No. 271 at 7; Doc. No. 271-1 at 3; *see also Liu*, 591 U.S. at 89 n.5 ("To the extent that feasibility is relevant at all to equitable principles, we observe that lower courts are well equipped to evaluate the feasibility of returning funds to victims of fraud.").   Further, the SEC has proposed a process for the return of disgorged funds through a fund administered by a distribution agent, who is appointed by the Court, and the disbursements to investors may be made only on order of the Court.  Doc. No. 271 at 7-8; Doc. No. 271-2 at 6.  The Parvizian Defendants assertion that the SEC has not and cannot show an appropriate distribution plan is simply without merit.

The Court finds that the SEC has identified the investors of the Parvizian Defendants' fraudulent Offerings, that the disgorgement of $9,844,127 is being awarded for the benefit of these investors, that the distribution of the disgorged funds to the investors is feasible, and that there is a plan to disburse the money to these investors that will be administered with the Court's supervision. *See Blackburn*, 15 F.4th

at 682 (holding that the district court's disgorgement order "easily satisfies *Liu*" on nearly identical facts).

### 2.    Amount to be Disgorged

Based on this record, the SEC has shown the Parvizian Defendants raised approximately $21,861,929 from the investors in the six Offerings.    The net disgorgement sought by the SEC, however, is $9,844,127 which reflects deductions for investor distributions and legitimate expenses related to the six Offerings.    The Parvizian Defendants did not produce any evidence of legitimate business expenses and did not otherwise demonstrate that this disgorgement amount is not a reasonable approximation.    *See Hallam*, 42 F.4th at 341.    Accordingly, the Court finds a disgorgement award of **$9,844,127** is a reasonable approximation of the Parvizian Defendants' ill-gotten gains and this amount shall be disgorged from them.

### 3.    Joint and Several Liability

The SEC also seeks joint and several liability for the Parvizian Defendants, asserting that they were all "partners in concerted wrongdoing and are equally culpable for the fraudulent scheme."    The Parvizian Defendants do not respond to this.

"Courts are likely to order joint and several liability against defendants as to disgorgement when 'two or more individuals or entities collaborate or have close relationships in engaging in illegal conduct.'"    *Myers*, 2018 WL 11353113, at *4 (quoting *SEC v. Hughes Cap. Corp.*, 124 F.3d 449, 455 (3d Cir. 1997)).    On this record, the Court finds that the relationship of the Parvizian Defendants—Leon Ali Parvizian

a/k/a Alex Parvizian, Arcturus Corporation, and Aschere Energy, LLC—is sufficiently close to support joint and several liability for disgorgement. *Cf. Liu*, 591 U.S. at 1949 (discussing the equitable principles of joint and several liability and directing the court "on remand to determine whether the facts are such that petitioners can, consistent with equitable principles, be found liable for profits as partners in wrongdoing or whether individual liability is required."). Accordingly, the Parvizian Defendants are **jointly and severally liable** for disgorgement in the amount of **$9,844,127**.

### 4.    Prejudgment Interest

A court may award prejudgment interest to prevent the defendant from profiting from his securities violations by means of using his ill-gotten gains interest-free. *Gilman*, 2021 WL 4125195, at *7 (citing *SEC v. Blatt*, 583 F.3d 1325, 1335 (5th Cir. 1978)). An award of prejudgment interest is within the district court's discretion. *Id.* (citing *United Energy Partners*, 88 F. App'x at 747).

The SEC seeks prejudgment interest totaling $938,770.65 to be paid jointly and severally. Doc. No. 271 at 8; Doc. No. 271-1 at 8. This calculation is made from August 20, 2019 (the date the case was remanded back to this Court) through March 1, 2022 (the filing date of the SEC's Motion for Remedies and for Entry of Final Judgment). The Parvizian Defendants do not contend that prejudgment interest is not allowed or appropriate, nor do they object to the SEC's calculation; they argue only that, if it is ordered at all, any prejudgment interest should be "a reasonable amount" taking into account their inability to pay based on their financial circumstances. *See,*

*e.g.*, Doc. No. 281 at 7, 9, 18. As the Court previously remarked, the Parvizian Defendants do not demonstrate their inability to pay. Even if the Court were inclined to consider this factor, the Parvizian Defendants submit nothing that even remotely establishes this. *See, e.g., id.* at 18. The Parvizian Defendants offer only attorney argument, complaining that the "crippling amount" of money the SEC seeks "would have an enduring and permanent financial impact" on them and "would financially devastate Mr. Parvizian". *Id.*

The Court has ordered disgorgement from the Parvizian Defendants of the net profits from their securities violations and the Court finds they profited from these violations in their use of these ill-gotten gains interest-free, "thereby offending basic principles of justice and equity." *Gilman*, 2021 WL 4125195, at *7; *see Myers*, 2018 WL 11353113, at *7. The Court finds in its discretion that the Parvizian Defendants should be ordered to pay prejudgment interest jointly and severally in the amount of **$938,770.65**.

### C.    Civil Penalty

The Securities Act and the Exchange Act authorize the imposition of civil penalties for securities violations. 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3). These penalties are organized on a three-tier structure of increasing amounts based on the severity of the defendant's conduct and securities violations, each tier demanding a specific showing. 15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3)(B); 17 C.F.R. § 201.1001(b). The court determines the amount "in light of the facts and

circumstances", but the maximum penalty that the court can award is the greater of the gross amount of pecuniary gain or the statutory amount as set by the applicable tier.  15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3).  A third-tier penalty is appropriate when the securities violation involves fraud and "directly or indirectly result[s] in substantial losses or created a significant risk of substantial losses to other persons." *Id.*  Although there is no statutory guidance for determining the proper civil penalty to assess, courts have considered certain factors: "(1) the egregiousness of the defendant's conduct; (2) the degree of scienter; (3) whether the conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the conduct was isolated or recurrent; and (5) the cooperation of the defendant with law enforcement authorities."  *SEC v. Offill*, Civ. Action No. 3:07-CV-1643-D, 2012 WL 1138622, at *3 (N.D. Tex. Apr. 5, 2012)(Fitzwater, C.J.) (quoting *SEC v. Opulentica, LLC*, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007)).

The SEC asks the Court to impose a third-tier civil penalty in the amount of $500,000 on the Parvizian Defendants jointly and severally for their securities violations.  Doc. No. 271 at 9-10.  The SEC maintains that this amount "adequately accounts for any possible mitigating factors" and is appropriate particularly "when the maximum statutory penalty per *each act or omission* is over $9 million".  Doc. No. 285 at 12.  The Parvizian Defendants do not challenge the SEC's request for a third-tier penalty, nor do they address any of the factors courts consider in determining whether to impose a civil penalty.  Rather, as with prejudgment interest, the Parvizian

Defendants respond only that the Court should decline to impose a civil penalty in light of their dire "financial circumstances" or "inability to pay".  Doc. No. 281 at 18.

Again, the Parvizian Defendants fail to offer any evidence, let alone make a sufficient showing, regarding their inability to pay such a penalty.  *See SEC v. Allen*, Civ. Action No. 3:11-CV-0882-O, 2012 WL 5875623, at *6 (N.D. Tex. Nov. 21, 2012)(O'Connor, J.) (rejecting the defendants' argument that they could not pay the requested penalties because the defendants did not establish their lack of ability to pay by a preponderance of the evidence); *SEC v. Harris*, Civ. Action No. 3:09-CV-1809-B, 2012 WL 759885, at *5 (N.D. Tex. Mar. 7, 2012)(Boyle, J.) ("[I]nability to pay must be established by a preponderance of the evidence, rather than the plain statement of a defendant, as we have here.").  Even so, a defendant's inability to pay a penalty "is at most one factor to be considered in imposing a penalty, and the Court may impose a civil penalty even assuming that he is unable to pay."  *Harris*, 2012 WL 759885, at *5 (citing *SEC v. Warren*, 534 F.3d 1368, 1370 (11th Cir. 2008)).

The record establishes that the Parvizian Defendants committed multiple securities violations arising from the six Offerings, that these violations are egregious in nature having involved fraud, and that they were committed intentionally or, at least, with reckless disregard for the legality of the Offerings.  Further, the Court finds that, in committing these violations, the Parvizian Defendants "directly or indirectly" caused the investors to suffer substantial losses or created a substantial risk of loss to

investors. Finally, the Court finds a civil penalty would serve the need to deter the Parvizian Defendants and others from violating securities laws.

The Court has carefully considered this record, the aforementioned factors, and the deterrent purpose of civil penalties. Because there are multiple violations of securities law here, the Parvizian Defendants could be ordered to pay the maximum penalty multiplied by the number of violations. *See Offill*, 2012 WL 1138622, at *3. However, the Court finds that a third-tier civil penalty in the amount of **$500,000** against the Parvizian Defendants jointly and severally is appropriate. *See Allen*, 2012 WL5875623, at *7 (imposing third-tier civil penalties against the individual defendant and his related entities jointly and severally); *cf. Myers*, 2018 WL 11353113, at *9 ("The Court views this as a mild penalty under the circumstances and an appropriate guidepost given the lack of argument as to amount of penalty.").

### D.    Permanent Injunction

The SEC may seek an injunction pursuant to the Securities Act and the Exchange Act. 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d); *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. Unit A July 1981). Injunctive relief may be proper "when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances, betoken a 'reasonable likelihood' of future transgressions." *Zale Corp.*, 650 F.2d at 720. In determining whether to impose a permanent injunction, the court considers several factors, including: (1) the egregiousness of the defendant's conduct; (2) isolated or recurrent nature of the violation; (3) degree of scienter; (4) sincerity of

the defendant's recognition of his transgression; and (5) likelihood of the defendant's job providing opportunities for future violations. *SEC v. Gann*, 556 F.3d 932, 940 (5th Cir. 2009).

The SEC argues, generally, that the Parvizian Defendants committed multiple violations, which were recurrent, egregious, and done with a high degree of *scienter*, and with no understanding or recognition of the wrongdoing. Doc. No. 271 at 3; *see id.* at 3-5 (detailed argument on these factors). The Parvizian Defendants do not respond to the SEC's request for injunctive relief.

For all the reasons previously explained and the facts deemed true, the Court finds the Parvizian Defendants acted egregiously in violating securities laws multiple times over a period of years with respect to the six fraudulent Offerings. Further, Mr. Parvizian has lengthy experience in the securities industry and has previously had regulatory issues which resulted in his consent to being barred to register as a securities agent for a period of five years with the Texas State Securities Board and a permanent bar from associate with any Financial Industry Regulatory Authority member. Doc. No. 5 at 4-5. The record is devoid of any evidence or even suggestion that Mr. Parvizian is remorseful or recognizes his wrongdoing. Finally, this record supports the conclusion that the Parvizian Defendants are likely to commit future securities violations. Having considered the factors, the Court finds that permanent injunctive relief against the Parvizian Defendants prohibited future securities violations is warranted.

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** the SEC's Motion for Remedies and for Entry of Final Judgment as to Defendants Parvizian, Arcturus, and Aschere (Doc. No. 271).   The Parvizian Defendants are **jointly and severally liable** for **disgorgement in the amount of $9,844,127**.   The Parvizian Defendant are **jointly and severally liable** for **prejudgment interest in the amount of $938,770.65**.   The Parvizian Defendants are **jointly and severally liable** for a **third-tier civil penalty in the amount of $500,000**.   The Parvizian Defendants shall be permanently enjoined from future securities violations.   The Court will enter a separate final judgment consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Signed January 28th, 2025.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE